```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
```

DISTRIBUIDORA VW, INC.,

    **Plaintiff,**

    v.                                  **CIVIL NO.** 12-1387 (JAG)

OLD FASHIONED, INC.,

    **Defendant.**

---

**OPINION & ORDER**

GARCIA-GREGORY, D.J.

In this diversity suit, Distribuidora VW, Inc. sued Old Fashioned Foods, Inc. alleging that the latter terminated their business relationship without just cause, in contravention to Puerto Rico's Sales Representative Act. Before the Court is Defendant's Motion for Summary Judgment (Docket No. 56). For the reasons set forth below, the motion is DENIED, except as to Plaintiff's breach of contract claim.

**FACTUAL BACKGROUND**

Old Fashioned Foods, Inc. ("Old Fashioned") is a corporation organized under the laws of Wisconsin that manufactures and sells cheese products. Old Fashioned first started doing business in Puerto Rico in 1999 with Ventura

Rodriguez, Inc. ("Ventura"), through Ricardo Rodriguez.[1] (Docket No. 67-3, at 2).

Old Fashioned and Ventura established a verbal agreement for the sale and promotion of Old Fashioned products in Puerto Rico. The parties agreed upon a 5% commission for sales after collection from Old Fashioned, $1.00 bill back per case and a $750.00 promotional allowance for 20-foot containers to be used by clients for shopper inserts. But the Rodriguez brothers ultimately decided to part ways. Ricardo left Ventura, and began to manage Old Fashioned clients in Puerto Rico. (Docket No. 66, at 2).

In order to continue doing business with Old Fashioned, Ricardo incorporated another company, Distribuidora VW, Inc. ("Distribuidora"), under the laws of Puerto Rico. For the entirety of their almost decade-long relationship, Old Fashioned and Distribuidora operated without a written contract. Importantly, though, the record shows that the parties kept doing business under the same terms Old Fashioned had agreed with Ventura.

---

[1] Ventura was a company owned by Ricardo and Roberto Rodriguez, two brothers. One of those brothers, Ricardo Rodriguez, learned about Old Fashioned products at a food show in Chicago.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of

evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

The Puerto Rico Sales Representative Act, commonly known as Law 21, provides a cause of action for damages when the principal in the business relationship arbitrarily terminates the distributor without just cause after the sales representative has created or expanded a market for the principal's products. Cruz Marcano v. Sanchez Tarazona, 172 D.P.R. 526, 543 (2007); P.R. Laws Ann. tit. 10, § 279 *et seq.* Under this law, the parties' business relationship is governed by a "sales representation contract," which is defined as:

> [an] agreement established between a sales representative and a principal, through which, and regardless of the way in which the parties establish, delineate or formalize said agreement, the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration.

Id. § 279(c).

Law 21 defines a sales representative as "[a]n independent entrepreneur who establishes a sales representation contract of an exclusive nature with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico…" Id., § 279(a). The Puerto Rico Supreme Court has expounded on this definition, determining that to qualify for coverage under Law 21, a sales representative must show that it "(1) exclusively promotes and processes contracts on behalf of the principal in an ongoing and stable manner; (2) operates in a defined territory or market; (3) is responsible for creating or expanding the market for the principal's products through promotional efforts; (4) receives commissions for his services or a pay previously agreed upon; and (5) operates as an

independent merchant." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 446 (1st Cir. 2010) (citing Cruz-Marcano, 172 D.P.R. 526).

Defendant spends the majority of its brief arguing, in different forms, that this case must be dismissed because Plaintiff cannot show it was an "exclusive" sales representative. None of its arguments hold merit.

    a. Article 82 of the Puerto Rico Commerce Code

First, Defendant cites E.A. Hakim Corp. v. New WinCup Holdings, Inc., 2012 WL 4678128 (D.P.R. 2012), a case decided by this Court, for the proposition that Article 82 of the Puerto Rico Commerce Code, 10 P.R. Laws Ann. § 1302, "requires all essential elements of a contract to be confirmed in writing." (Docket No. 58, at 10). In Hakim, we relied on the First Circuit's observation that under "Puerto Rico law, a commercial contract must be corroborated, and this requirement extends not just to the existence of an agreement but also to its essential terms." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 122 F.3d 88, 89 (1st Cir. 1997). Here, Defendant contends that there is no evidence, aside from testimony proffered by Plaintiff's president, on the issue of exclusivity. Therefore, Defendant asserts that Plaintiff cannot possibly show it was an exclusive sales representative.

After review, the Court finds that our reading of Article 82 in Hakim, and consequently, the First Circuit's statement of Puerto Rico law in Garita, is wrong. To show why this is the case, we start with the plain language of Article 82:

> "Commercial contracts shall be valid and shall cause obligations and causes of action whatever may be the form and language in which they are executed . . . provided their existence is shown by any of the means provided by civil law. However, the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract the amount of which exceeds three hundred dollars, unless such testimony concurs with other evidence."

The first thing to note is that, contrary to what Defendant suggests, there is nothing in Article 82 that requires corroboration through *written* evidence. See MMB Dev. Grp., Ltd. v. Westernbank Puerto Rico, 762 F. Supp. 2d 356, 367 (D.P.R. 2010)("If the second sentence of Article 82 were read to require written evidence for the enforcement of commercial agreements, the first sentence of Article 82 would be rendered inoperative."). Rather, Article 82 provides that the existence of contracts may be shown "by any of the means provided by civil law." Id. Accordingly, the acts and omissions of a party, as well as other circumstantial evidence (subject to the bounds imposed by Puerto Rico law), is fair game in this analysis.

In Garita, the First Circuit relied on Vila & Hnos, Inc. v. Owens Ill. de Puerto Rico, 17 P.R. Offic. Trans. 987, 997–1000

(1986), for the proposition that the elements of a commercial contract must be corroborated through something more than just oral testimony. See Garita, 122 F.3d at 89. As we discuss in further detail below, Vila lends no support for that notion. Simply put, Article 82 says absolutely nothing about the terms and conditions of the contract. Rather, it is the "*existence* of a contract" that cannot be sustained on the basis of oral testimony alone. Id. (our emphasis).

In Vila, Owens Illinois of Puerto Rico ("Owens") negotiated with Vila Hermanos, Inc. ("Vila") "for the supply of certain raw materials --limestone and silicious [sic] sand-- it needed for a glass plant it was organizing." Vila, 117 D.P.R. 825, 17 P.R. Offic. Trans. 987, 990 (1986). In order to meet Owens' demands, Vila attempted to buy a quarry in Vega Baja but failed because banks were unwilling to provide credit. In response, Vila and Owens formalized their agreement through two supply contracts, which were presented to the banks "to back up the viability of Vila's business." Id. at 990-991. In those contracts, Vila represented that it already "had a plant to process" sand and limestone. Id. at n.3. Despite its efforts, Vila's loan applications were denied by the banks.

After more failed attempts to obtain the financing necessary to buy the quarry in Vega Baja, Vila shifted gears and

obtained a "promise of sale" contract on another property. After some negotiation, the parties reached a deal in which Owens' parent company, Owens Illinois, Inc., "would finance" Vila's purchase of the property. Id. That deal was not memorialized in any document. Critically, "[t]he only evidence filed to establish the financing contract [was] the testimonies of Vila, of his son, and that of Poggi, the latter two serving as Vila's interpreters during the talks." Id. at n. 5.

Notwithstanding, Owens later sent Vila a letter stating that they were no longer going to do business, justifying it with the fact "that Vila had represented having a plant which actually he did not have." Id. at 993. Owens successfully sued Vila for breach of contract, alleging that Vila had not obtained the financing necessary for the project. Vila appealed.

On review, the Supreme Court of Puerto Rico found that both the supply contracts and the associated financing contract were commercial contracts. Moreover, the court found that the financing contract was "essential" to enable Vila to meet its obligations under the supply contracts. However, because there was no evidence other than oral testimony regarding that contract, the court found that Vila "*did not prove the existence*" of the financing contract. Id. at 998. Consequently,

Vila could not prove that it had met an essential element of the supply contracts at issue.

It is clear that the Vila court only applied Article 82 to the financing contract, and on that point, found that Vila was unable to prove the contract's existence. The court never held that Article 82 required "corroboration" of the essential elements of the supply contract. Nor would it need to, as the financing clause of the supply contract was spelled out in writing. Thus, Vila provides no support for the notion that Article 82 requires that the essential elements of a contract be "corroborated." Moreover, to require such proof would lay waste to the opening stanza of Article 82: "Commercial contracts shall be valid and shall cause obligations and causes of action *whatever may be the form* and language in which they are executed." P.R. Laws Ann. t. 10 § 1302. In a nutshell, after a contract is proven to exist with something more than just oral testimony, the contours of the contract's scope may be mapped with whatever admissible evidence is available.

Here, that distinction is material and defeats Defendant's argument. In this case, there is a genuine issue of material fact concerning whether the parties entered into a contractual relationship in 2001. Plaintiff's president, Ricardo Rodriguez, testified that Old Fashioned and Distribuidora VW had such a

contract. (Docket No. 67-3, at 2). His testimony concerning the existence of that contract is corroborated by the fact that over the course of almost a decade, Defendant paid commissions to Distribuidora VW, and also provided cash back and other incentives for Plaintiff's sales representation. (Docket No. 67-5, at 1). Article 82 therefore proves no bar to Plaintiff's claim, as Plaintiff established a genuine issue of material fact concerning the existence of the contract with more than just oral testimony.

      b. <u>Whether the sales representation contract was exclusive</u>

Defendant next argues that Plaintiff was not its exclusive sales distributor. While exclusivity is essential to the question whether a sales representative is covered by Law 21, the concept was left undefined by the Act. Naturally, though, courts have found it necessary to provide meaning to the term. To start with, the First Circuit has long held that exclusivity "is generally apparent either from the contract or from the arrangements agreed upon between the parties." <u>IOM Corp.</u>, 627 F.3d at 448 (<u>citing Orba, Inc. v. MBR Induestries, Inc</u>., 49 F.Supp.2d 67, 71 (D.P.R. 1999)). In addition, the Supreme Court of Puerto Rico has held that exclusivity may be shown if the terms of the sales representation agreement restrict either the principal or third parties from selling "the product in the same

territory or market in which the sales representative operates." Cruz Marcano, 172 D.P.R. at 548.

In Cruz-Marcano, the Supreme Court derived its definition of exclusivity from mercantile law. But as Judge Casellas recently noted, there is another compelling definition of exclusivity that is neither inconsistent with Law 21 nor with Cruz-Marcano. Exclusivity, in the "traditional" sense, may be found when "an agent is the sole sales representative within a defined territory," or when its "sole business is to represent the principal's products or services." Gonzalez v. Hurley Int'l LLC, 920 F.Supp.2d 243, 255-56 (D.P.R. 2013)("Cruz Marcano seems to have left unanswered the question whether exclusivity is simply a limitation on the principal's right to compete (the mercantile law definition), or whether it can also encompass the Traditional Interpretation: a non-compete obligation by a sole sales representatives whose business is solely to represent the principal's products.").

Before we delve into the question of exclusivity, we must address another obstacle raised by Defendant: that Plaintiff has no standing to sue. Defendant says that before Plaintiff was incorporated, it was represented by Ventura in the Puerto Rico market. But when Old Fashioned stopped doing business with Ventura, the record shows that it started doing business with

Plaintiff under the same terms and conditions it had established with Ventura. However, says Defendant, Ventura never transferred any rights to Plaintiff. Therefore, according to Defendant, Plaintiff has no standing to sue under this contract, because it was never a party to the same. However convoluted this argument might seem, at bottom, it is nothing more than a red herring. Plaintiff does not claim any rights under the contract that Ventura had with Defendant. And, as we discuss below, Plaintiff may rely on the course of dealings it had with Defendant over the course of a decade to establish the existence of its own -exclusive- sales representation agreement.

Thus we arrive at the meat of Defendant's argument: that the parties never *expressly* agreed that their contract was exclusive in nature. This argument weakens substantially after one rejects its contentions regarding Article 82 and standing. In a nutshell, the parties' course of dealings evinces a genuine issue of material fact on this matter.[2]

As noted above, the scope of the contract at issue may be shown through "the arrangements agreed upon between the parties." IOM Corp., 627 F.3d at 448 (citation and internal

---

[2] The Court points out that Plaintiff's brief is skeletal, at best, and does not even cite to Hurley. However, our discussion here shows that despite Plaintiff's arguments (or lack thereof), Defendant has not shown that it is entitled to judgment as a matter of law. Whether Plaintiff can prevail at trial is another matter entirely.

quotation marks omitted). Thus, the parties' course of dealings may indeed reveal what their statements do not. See Hurley, 920 F.Supp.2d at 8 (denying summary judgment where triable issue existed on whether course of dealings established exclusivity under Law 21); see also Homedical Inc. v. Sarns/3M Health Care, Inc., 875 F.Supp. 947, 951 (D.P.R. 1995)("[courts] acknowledge the potential use of evidence of commercial practice between the parties as a helpful tool in diagnosing existence of a relationship protected under Law 75, and its exclusive or nonexclusive nature"). On this point, the record shows that before Plaintiff was incorporated, Defendant had various sales representatives in Puerto Rico. (Docket No. 57-6 and Docket No. 57-1). From 2001 onwards, though, there is no evidence on the record showing that Defendant had sales representatives other than Plaintiff. This is corroborated by the testimony presented by Plaintiff's president, Mr. Rodriguez, stating that throughout this entire period, Plaintiff was Defendant's *sole* distributor.[3]

---

[3] Old Fashioned claims that, since Mr. Rodriguez's affidavit was submitted only after Old Fashioned moved for summary judgment and for the sole purpose of defeating that motion, the same should be striken under the sham-affidavit doctrine. This argument fails. This doctrine allows the Court to strike affidavits that, without any reasonable explanation, contradict previous witness testimony in an attempt to block summary adjudication. See generally Rivot-Sanchez v. Warner Chilcott Co., Inc., 707 F.Supp.2d 234, 259-260 (D.P.R. 2010). Such is not the case here, as Old Fashioned fails to successfully identify *which* statement issued by Rodriguez is contradictory. The

Curiously, while Defendant was perfectly entitled to seek summary judgment on the purported lack of evidence, it could have easily presented evidence showing that Plaintiff was not the only sales representative operating in that time span. But, Defendant does not point to a single commissions check, for instance, paid to someone other than Plaintiff.[4] This, coupled with our prior observations, lead us to conclude that summary judgment must be denied.

We make one final observation. In many cases dealing with verbal contracts under Law 21, courts have generally denied summary judgment by finding some evidence, not merely circumstantial, showing that the principal made an affirmative concession of exclusivity to the representative. See e.g.

---

closest his statement comes to contradiction is regarding his testimony regarding Borden. In his deposition, Ricardo Rodriguez admitted that Borden had made some purchases from Old Fashioned. In his affidavit, though, Rodriguez asserts that Distribuidora VW was the sole sales representative of Old Fashioned. But the statement is not contradictory inasmuch as Rodriguez characterizes Borden as "going behind his back" in purchasing products from Old Fashioned. See Docket No. 57-2 at 12 (page 121 of the entire deposition). Moreover, "not all instances of direct sales by a principal are considered to defeat exclusivity". Gonzalez v. Hurley Intern, LLC, 920 F.Supp.2d 243, 254 (D.P.R. January 31, 2013) (citing Stewart v. Husqvarna Const. Products North America, Inc., No. 11-1182, 2012 WL 1590284, at 6 (D.P.R. May 4, 2012)). Rodriguez's affidavit, while self-serving, is still valid ground upon which this Court may deny Old Fashioned's motion.

[4] Old Fashioned attempts to show that it had, indeed, made such sales. The record simply fails to support Old Fashioned's assertion with any force.

Hurley, 920 F.Supp.2d 243; Orba, 49 F.Supp.2d 67; Cruz-Marcano, 172 D.P.R. 526; Yordan v. Burleigh Point, Ltd., 552 F.Supp.2d 200 (D.P.R. 2007). While such a smoking gun is not necessary at this stage, a jury considering this issue may certainly find it relevant and dispositive.

### c. Plaintiff's Breach of Contract Claim

In its complaint, Plaintiff also includes a separate cause of action for breach of contract. Defendant argues that this claim must be dismissed as Plaintiff's only source of relief is under Law 21. Plaintiff does not voice any opposition.

Here, the record does not show that the parties' purported contract had a fixed term of duration. Under Puerto Rico law, these contracts may be terminated at will. See Warner Lambert, 101 D.P.R. 378 (1973); Figueroa v. Miranda & Eguía, Inc., 83 D.P.R. 554, 555-556 (1961); Arecibo Motor Co. v. Caribe Motors Corp., 60 D.P.R. 401, 407 (1942); Castillo v. Smart Products, 289 F. Supp. 138, 140 (D.P.R. 1968). We therefore agree with Defendant, and shall dismiss Plaintiff's breach of contract claim with prejudice.

## CONCLUSION

In light of the above, Defendant's Motion for Summary Judgment is denied except for the breach of contract claim under

the Puerto Rico's general contractual law. Finally, Defendant's request for attorneys' fees is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2014.

<u>S/Jay A. Garcia-Gregory</u>
U.S. District Judge